No. If you have set aside some time for rebuttal when you begin and you make all the first case case number 15 32 38 Ronald Phillips at all versus Mike DeWine at all. Oral argument not to exceed 30 minutes per side. Mr Sweeney for the appellants. Good afternoon. Pleased the court. I'm Tim Sweeney on behalf of the appellants and I'm privileged to be here today to argue this case. I'd like to reserve eight minutes for rebuttal if I could, please. You may. Thank you. I'm curious. Public defender didn't file a brief. Um, he represented here today. The appellants in this case, Judge Norris are represented by various counsel. Some are represented by public defenders. Some are represented by private counsel, like me, appointed under the C. J. A. So everybody here has been represented and we've worked together on the brief. All right. Um, this law is unconstitutional in multiple respects. They're set out in our brief, and it was error to dismiss this complaint at the pleading stage under Rule 12 B six. We've spent a good deal of time in our brief addressing the First Amendment issues, and I want to talk about that some today. I would like to first, though, address the due process questions that this law presents, particularly in view of the recent development in the 11th Circuit, the six to five decision there that we supplemented recently. That's the Jones case. And I want to do that first. The key question in this case, it seems to us, is do the constitutional guarantees of due process and meaningful access to the courts permit the government to enact a law that denies to unpopular litigants the very information necessary to determine whether or not the government itself is impermissibly infringing on those litigants' fundamental rights? That's the question that the due process provision here presents, and the answer to that is no. This law denies these due process protections. I don't think there's any question that the Eighth Amendment protects these inmates against an inhumane execution, nor is there... I'm not asking for the production of the drugs, of the protocol. You're asking for the ID of a couple people. How does that... We're asking, Your Honor, for the ability to litigate our claims. You persuade, I thought you said. This court has held in Lorraine, in the Lorraine decision, recognized the other aspect, because there's an Eighth Amendment interest that's protected by due process. There's also a right to equal protection that's protected by due process, and that right to equal protection means the government has got to follow its own rules. That's what the court here in Lorraine said when it said that. The remedy we seek, Your Honor, is the invalidation of an unconstitutional enactment. And how does that help your clients? Four, well, in this case, one death row inmate. If we focus on the due process issue, it helps us to litigate claims that have been successful in the past. The thing that's so disturbing about this law is that it denies the ability to meaningfully litigate claims that have been successful, that have been able to advance the argument and advance the public's knowledge of lethal injection as a method of execution. That's been what these litigants have been able to do. And for a law to choose to burden that type of advocacy in the way this law has done is something that's unconscionable under our standards. Tell me what your remedy is. You wanna know the identification of the maker of these drugs so you can persuade him not to do it anymore. What's that got to do with litigating these people? Well, Your Honor, that's the First Amendment argument. Let me focus on the due process argument first, though, because the reason we need to know who these people are is because it's at the core of whether our clients' equal protection rights are being followed and whether their rights to avoid an inhumane execution are being followed. The need for the information is more clear now than ever when you're using lightly regulated or unregulated drug makers. So just with respect to the due process issue, there's an interest here that needs to be protected. And the interest that needs to be protected is the interest against an inhumane execution. And so why do you need the information? Why is it important to know who the compounder is? Well, it's important because compounding is a complicated process. And in order to fully litigate that process, you need to know who they are, what kind of experience they have, whether they've done this before, what kind of laboratory they use. Don't ask for that. You just ask to persuade them to quit it. No, Your Honor. We've done much more than that. Our due process claim is focused only on the inmate's interests. There's a First Amendment interest which is also alleged. But at this point, I'm focusing on the due process interest. What's the best case for the due process violation here? Well, I think the best cases, Your Honor, I think the best cases are Matthews v. Elbridge and Goldberg v. Kelly, which say if you're gonna be depriving somebody of an interest that is protected by due process, you've got to afford some level of protection. Are those death penalty cases? Those cases arise in contexts where the interests are much less significant than the interests that are at issue. They're not death penalty cases. They're not death penalty cases. They're not death penalty cases, but they stand for the proposition that when an interest that is protected by due process is going to be impacted, there must be procedures in place that protect that interest. And here, the interest is in an inhumane execution. There, it was in whether you get welfare benefits. I mean, this interest we're talking about here is at a much higher level. Well, listen, the interest is in the people who... We've had a number of cases that have spoken to this circularity of reasoning and the problem with understanding how you can deny access or standing to someone who stands in the face of death in light of the law that would allow them or the law they would be required to satisfy in the Eighth Amendment. Isn't that what... We have it in our own case below. The decision below even recognizes that there's the issue. So, why do you think Goldberg changes where the law stood? I think what Goldberg does is it sets the framework. And Goldberg says, this is how you're supposed to analyze these types of issues. Goldberg and Matthews and other cases, and this 11th Circuit Jones case that we recently supplemented that was decided in February of 2016. And that case said you need... Five dissenters in that case, six to five. Five dissenters said, with respect to this interest, this interest in avoiding an inhumane death... What did the majority say about it? The majority didn't agree. The majority took the same position that the lower court here took with respect to it. Yes, yes. The majority did. But here's what's significant and what I think is remarkable about the Jones case, is that Judge Frost, in our case here, relied on Wellens in analyzing the due process issue. And he quoted extensively from the concurrence in Wellens, which was written by a judge named Judge Wilson. And Judge Wilson's position was that this does present some challenges and some questions, and I'm not comfortable with holding that due process isn't violated here. But he nevertheless concurred in Wellens. But when Jones came up to the 11th Circuit, a year and a half later, that same judge switched. He said, Wait a minute. We shouldn't be relying on Wellens. Wellens was wrongly decided. It wasn't properly reasoned. We didn't analyze the due process interest properly. We didn't follow Goldberg and Matthews v. Elridge. And what Judge Wilson did is he changed his view. He said, We did this wrong. And four other judges joined him. That's a significant development in the law in this area. We're not... So how would you apply? We're here on a motion to dismiss. We are not here on having to put proof forward. Right. So the question before us is whether you have stated allegations that are sufficient to state a claim. That's right. How will Goldberg help you show that your complaint is sufficient to state a claim? Because, Your Honor, we've stated in our complaint that there's an interest at stake that's protected by the due process clause, and that this enactment, in its compelled secrecy provision and in its court sealing provisions, are denying that interest. They're insufficiently protecting that interest from deprivation at the hands of the state when they seek to execute these people, and when they seek to under equal protection and under the Eighth Amendment. It's the equal protection interest that is being deprived. It's the interest in avoiding an inhumane execution that is being deprived. This court in Lorain recognized how important that equal protection interest is. They recognized that, and they said... That execution was... A preliminary injunction was granted because Mr. Lorain was able to demonstrate that the state wasn't following its own protocol and that that was an equal protection violation. That equal protection interest is an interest that due process protects. And the problem with HB 663 is that it eviscerates, takes away, any due process that is necessary to protect that interest. It disables that interest from receiving the due process protection that it's entitled to receive. That this court itself... Along the line of what was said here, is that that which is necessary to approve your claim is that which must be withheld. Yeah. The necessary is also the withheld. You must give us that which you cannot have to give. That judge, the lower court here recognized exactly what is going on, yet you know what the lower court did? It concluded that there wasn't an interest that due process protects, but that's because it made an error of law. It focused on the First Amendment. It said because there's no First Amendment right to this information, then there's no interest that due process protects. There is a First Amendment. But your argument is that the interest has to do with the ability to challenge... Well, with information that is held by individuals, to challenge the unconstitutional nature of an execution when it's botched? Is that the other argument? Yeah. The interest that the lower court here missed is that there's an Eighth Amendment interest that due process protects, which is precisely what you're referring to. The ability to be able to challenge in the litigation that's going on in the district court, to challenge these particular inmates' claim, to present these particular inmates' claims that they have an interest in not being executed in an inhumane way. But also, the other interest is the interest in equal protection, that the government be required to follow its protocol and adhere to the core requirements. Those two interests are interests that due process protects. We've alleged that. This statute... The way you protect that is to get the identity of these people. In order to... That's all I see your prayer says. You wanna repeal the statute. I don't know how that accomplishes what you're talking about. Our view, Your Honor, is that the statute is unconstitutional for multiple reasons. We've stated a claim that should have survived the motion to dismiss. The remedy is something the District Court on remand can sort through. But we certainly stated a claim that our client's due process interests are denied by this law because it disables them from protecting the interest that due process protects. And that also is an issue concerning meaningful access to the courts, which is the other related issue. The due process, meaningful access to the courts, they go hand in hand. And they all center on, is there an interest that is protected by due process? And the answer to that question is, yes, there is. It's the interest in avoiding an inhumane execution. No one can quarrel with that, that that is an interest. You also have allegations that would suggest that this is an issue for the individuals who desire to come forward from the public. People who have participated in the past and desire to speak to the issue in the public domain? That's a related issue. There's two issues, and I'm gonna move into the First Amendment, because that's a related issue. This statute is unconstitutional for multiple reasons. The due process is part of it. The other part of it is, is what the whole law is about, we believe, is an effort by the government to disable and burden speech that has been effective. And they wanna disable it and burden it because the communicative effect of that speech has had an impact the government doesn't like. So the problem below your complaint about the decision below is that it applied the incorrect access test? Well, the decision below with respect to the First Amendment issue, the court below... We're moving back toward the access... Yeah, we're talking here... I'm talking here about First Amendment. The First Amendment issue here is... The court below defended the law by concluding that it's beyond the reach of the First Amendment, that when you deny access to government information, the First Amendment isn't even concerned. And that's been the Attorney General's position as well, that this doesn't even raise a First Amendment issue. And that, in fact, is why Judge Frost didn't find there to be an interest that due process protects. But that's wrong. I mean, the First Amendment issue here is quite apparent. And the issue is... Tell me what it is. I'm not sure I've... The substance of the law matters, not the form. The fact that you put it in the form of a denial of government information doesn't insulate it, Your Honor, from First Amendment scrutiny. A law that is motivated by viewpoint bias and is designed to burden the viewpoint the government doesn't like, is always going to impact the First Amendment. It burdens speech. You're saying the First Amendment protects, gives you the right to find out everything that the government doesn't want you to find out about. I'm sorry, I missed that. You're saying that the First Amendment covers all governmental things, grand jury proceedings and the confidential information and transmissions and all this stuff. Well, what we're saying is that the government cannot enact a law whose purpose and effect is to burden speech with which it disagrees. When viewpoint bias is at the root of a law, the law immediately raises First Amendment concerns. Because here's why. Burdens on speech can be direct and they can be indirect. And what the government did here is they said, we know that this public record statute has permitted speakers to obtain information and speak out against the death penalty. We don't like that speech. We don't like the communicative impact it has had. We don't... And so we're gonna stop it. Does it say that your clients can't speak out against the death penalty? Well, let's take an example. The Ohio Public Records Act has six pages of exemptions of disclosure. You don't mention that, but exempted in that statute are penal workers. You're just saying that all that now is public, all those exceptions are out. We're not saying that. Because you might wanna persuade a cop not to shoot people. I don't know. The point here, Your Honor, is that the government has always provided this information. The limiting principle is this. The government has always provided this information and now they're taking it away. Why are they taking it away? Now you're back to, I think, what the gravamen of your argument is, is that it's an access issue. And the access is a question of whether you apply the Hutchins test or whether you apply experience and logic test. Won't by applying the experience and logic test, which is where the Supreme Court has moved and the Sixth Circuit has moved, is that not... Help me understand why that's not the argument that lies at the core of what you want to... That is a second argument. The first argument, which I think you get to always, before you even get to that, is has the government taken... Have they enacted an abridgement? Have they done what the First Amendment prohibits, which is have they enacted a law which abridges speech? And those abridgements can come in different forms. One form, we argue, is to deny, take away information that had previously been available for viewpoint biased purposes. If you do that at the front end, you don't even have to get to the back end and say, okay, does it impact the government proceeding? We win even if you go to the back end because it does impact the government proceeding. The government proceeding here is a lethal injection execution and all the documents associated with it. Detroit Free Press, in other cases, would say we should prevail there, but you don't even have to go there when you have a viewpoint biased enactment at the front end. The government can't pass laws whose purpose and effect is to burden speech because of a viewpoint bias, even if they denies access to information. Now, that's Sorrel. That's United Reporting. How do you get around the Wellens case and the Zink case we have here? Well, Your Honor, first of all, I think Wellens is crumbling. It went from... It's still there. It's still there, but it never... It's crumbling. There's a lot of cases that are crumbling around, but they're still the law. You're right. But here's the point on Wellens and Zink. They don't address this First Amendment issue. Nobody in Wellens or Zink argued that the enactment at issue was a viewpoint biased enactment whose purpose and effect was to burden the message the government didn't like. That's what this case is. Governments can't do that. They can't take a look at the landscape and say, we don't like the fact that advocates have made good and effective use of this information, so you know what we're gonna do? We're gonna take it away, and we're not gonna let them use it anymore. Why? Because we don't like their message. That's unconstitutional. Or here's what it is. It raises a First Amendment issue. It's wrong for the government to say that doesn't implicate the First Amendment. Of course it does. Of course it implicates the First Amendment for the same reason Sorrell implicated the First Amendment. These are First Amendment issues at their very core, and if the government is free to sort of decide what issues they don't wanna hear people speak about anymore, and so they take away subsidies that they had previously provided because of a viewpoint they don't like, that is wrong. They always provide the names of the executioners in cases like this in the past, in a while. I'm sorry? Have they? They've made that... Did the state provide the names of executioners in the past? This kind of information that we're talking about concerning the drugs and the drug makers has always been available. It's always been available. And you know why? And that's why the advocacy has been able to be effective. So what's the response? Take the information away. Question is, has the state always provided the identity of the executioner? The person who actually pushes the drugs, no. But the government contractors who choose, for whatever reasons, to contract with the state to supply supplies for government programs, there's no reason in the world they should be secret. They've never been secret. If you wanna find out what the government is contracting with in the state of Ohio, you can go on the internet to their internet checkbook, and you can look it up. You can find out who they are, and you can find out what they've been paid, and you can find their contract. There's no reason they're allowed to be kept secret because the government doesn't like the fact that advocates have been effective in speaking out using that information. That is unconscionable under the First Amendment for the legislature to think that's okay, or for the courts to say, it doesn't even have to concern us because it's not a First Amendment issue. It is a First Amendment issue. It's a First Amendment issue at its core, and it may be an indirect burden on speech. It may be done indirectly, but it's nevertheless a burden on speech. And when the burden is because of a viewpoint biased reason to suppress or burden or make more difficult a message the government doesn't like, we all have to be concerned about that. We think an analogy that's helpful is, could the government during the Vietnam War era have decided to shield the names of weapons makers because student advocates were effective in protesting Dow Chemical's involvement with napalm? No. Could they have done that? Some of it's secret. It may not have been Dow, but it kept a lot of providers secret, right? But to take away information that has always been there because you see advocates being effective in speaking out against that... The information that you're addressing there is not the name of executioners. The information you're addressing there is what was previously available through financial disclosures by the state, how much they paid, who they paid for the drugs, correct? Correct. Exactly. The type of information... That's the type of information that you then want to turn into the public arena for purposes of addressing what is the evolving right under the Eighth Amendment. Correct. For the purposes... I think you've used all your time. So you will have your eight minutes afterwards. Thank you. Thank you. Good afternoon. May it please the court. My name is Tiffany Carwile. I'm here on behalf of the state defendants, the impellees in this case. This case does not involve a constitutional violation and the district court correctly dismissed it pursuant to 12B6. I'm gonna take the arguments backwards unless the court has questions with regard to due process right away, but... I would like you to begin with the right of access and why Hootchins would be the correct test to apply when our law has moved pretty significantly everywhere to the experience and logic test of Justice Brennan. With regard to the experience and logic test, I would note this court's decision in the Shark versus the Metro Parks case that this court clearly stated that the experience and logic test is unique to the judicial context. It's in footnote two in that in other access cases, and for example, in the Metro Parks case, it was access to parks and hanging video equipment there, that the experience and logic test is not applicable, that that framework does not apply in those cases, and that it only applies basically to judicial proceedings or as in Detroit Free Press to quasi judicial proceedings. And Detroit Free Press went through why it could apply to quasi judicial all the aspects of a judicial proceeding. Our case law, I think, is very clear, isn't it, that records themselves should be accessible under the experience and logic test that would apply in this situation. Help me understand how fair, I think it's fair finance and Detroit Free Press, and even looking back to Richmond newspapers and press enterprises, it seems to me that all of those grapple with the qualified right of access, not just to the proceeding itself, but to the records that are involved. Those proceedings, particularly the Supreme Court, the Supreme Court has only applied that standard to judicial proceedings. The Third Circuit noted that in the Capital Care case that the experience and logic test, the Supreme Court has not applied it outside of judicial proceedings, and that Hoechlin's is the case that you would look towards for access to information cases. Now, Capital Care, in Odom Bunson's caution, went ahead and applied, went through the test and said, even if we apply this, you still don't get that information. But it was... We're talking now about applying a test to determine whether the allegations of the complaint are sufficient. We are not at an evidentiary stage. So tell me why the allegations... Let's assume that experience and logic applies here to what is, without question, the end proceeding in a judicial proceeding. It's the execution. So it's a portion of what the judicial determination has, or the effectuation of what the judicial determination has been. So apply for me and tell me why experience and logic would not result in an adequately stated claim. Your Honor, we do disagree with that the experience and logic test would still uphold the district court's decision, and I would point the court to the district court's decision in the Wood v. Ryan case out of the Ninth Circuit. Which applied the experience and logic test, correct? They apply it more broadly than any other circuit in this country, Your Honor. Zink applied it in the Eighth Circuit, didn't it? In an abundance of caution, they applied it. They did not say that it does apply. Wellens in the Eleventh Circuit applied it, didn't they? They did not. They mentioned it, but they did not go through the analysis, and Wellens, they said there is no... They equivocally said... Because they said they would have applied that test, did they not say, but that there were not sufficient allegations in the complaint to satisfy that? I don't believe they actually officially said we're adopting the experience and logic test in this circumstances. And outside of the Ninth Circuit, I found no case that specifically said we are applying this case, that this case always applies in these circumstances. A lot of the cases will say, we don't know, the Supreme Court hasn't applied it in this case. In an abundance of caution, we're going to assume it applies, and then they have gone through the test. But besides the Ninth Circuit, I found no circuit that affirmatively said, yes, we are applying this in these circumstances. But neither Zink nor Wellens applied Hutchins, right? They mentioned... The Zink case discusses some aspects with regard to that. It did not go in and just unequivocally said we are applying Hutchins. If you look at the third district in the capital care case, they say that in these type of cases, Hutchins or Hutchins is the most applicable case for looking at access of information, access of documents, because the First Amendment is not a Freedom of Information Act. And applying the experience and logic test to documents would make the First Amendment a Freedom of Information Act, and that's what it is not. The United Reporting supports that. United Reporting says that we can... Why do you say that applying experience and logic would make it a Freedom of Information Act? That test says, did you historically open to the public and the press this information? And two, does public access play a significant positive role in the functioning of the process? Those are process questions. And that's why... That's exactly why it doesn't apply, because there's a process, a proceeding. This is documents, this is information. It's not talking about a proceeding. It's talking about whether you get to know the identity of someone that's involved with the state. But they are... But it's both Wood, Zink, Wellens, and our cases that talk about the application of the experience and logic test all indicate that it is applicable to proceedings and all of the underlying records and documents. Fair Finance says that outright and clearly. So what we're... What we are about is trying to determine whether these documents have that sufficient... That relationship by allegation that you could state a claim in requesting them. And we would say, no, this is not part of the judicial proceeding. This is an executive document, an executive branch function. That's not a proceeding. And if you look at Shark Metro Parks, which came after Detroit pre pass, they clearly say that the experience and logic test, the Richmond newspaper and its progeny, applies to judicial proceedings, that those are a unique circumstance. We're not talking about that unique circumstance of judicial proceedings here. We're talking about documents. We're talking about information. That's exactly what Hootchin was wanting... Was going after. They were going after information. They wanted to go into the jails. They wanted to interview inmates to find out about the jail conditions. The assumption in Hootchin's or Houchin's was that they wanted more than the public had the right to. What this complaint says is we want the public to have the right to this information. If you look at Capital Media, again, from the Third Circuit, they clearly say that while Houchin's does discuss a press right, that the underlying premise was... The underlying premise of the supporting argument was that the press access is necessary to vindicate the public's right to informed self government. And that... You see, the distinction is what they wanted was over and above what the public should have. They wanted to be able to go into the jails and take photographs. They wanted to have complete access. What is pled here is that this is public information. It always has been, and it is a part of the process that is necessary. And under that then experience and logic, they're suggesting that the application of that means that it is the public that needs to know the name of people who previously were involved in execution and now want to speak to that issue. They have the very sort of information that has been declared confidential by this act. So the act itself is saying known information to people who have participated in executions in the past who would now speak to that is confidential on pain of pretty ruinous damages. So why isn't it a public interest that we are talking about the provision of this information in the marketplace of ideas to determine whether our society under the Eighth Amendment believes that this... That capital punishment is appropriate? I think there may be... I'm not entirely sure if I'm gonna answer your question. But if you look at the statute, it doesn't say that information that's already out in the public is now confidential. It's talking about... Of course it does. Help me understand how you can say that. It says if you are an individual who has in your possession this information, and if you tell it to the public, then you can be sued for damages, exemplary damages, punitive damages, costs and fees. Okay. I think I understand the question. The civil penalty provision, I believe is what you're just talking about, applies only to information that's held by the government. Well, that's what the court below said. I'm not convinced of that. When I read that any person who provides that information... Your Honor... And the information that they're referring to is under B and C, B1 and C. I understand that that's a limitation, but the secrecy provision applies to anybody who shares that information. Your Honor, the confidentiality provision applies to government held information. So if it's not held by the government, then that provision does not make it confidential. Okay. Then the government... I worked for the government. I know who is providing the lethal injection drugs. I retire. I want to speak to that. Isn't that person subject to a suit if they speak to that? That person would be, Your Honor. And the Supreme Court in the Florida Star case said that the state, the federal government, the state, it is permissible for them to put regulations on their employees and then even have a damage. How long are their employees? The state statutes, in effect, already, even before the statute, make it a criminal violation to disclose confidential information. It's in the ethics provisions in 102.03. It's true about the military and the CIA and all those organizations, right? Exactly, Your Honor. If you retire or quit government employment, it does not mean that you can then go divulge confidential information. You are still under the provisions that governed you while you were an employee of the drug company, and you knew how the compound was compounded, so to speak, and you dealt with the government on that. Just say you had some sales relationship with them, and then you quit. Is that person barred, subject to suit? It would be the state's position that that person would not be under the civil penalty provision. They very well may have a confidentiality contract with their employer that would govern that, but this statute would not govern an employee of the compounder. No. It doesn't regulate the speech of a compounder as to how he does it, does it? No, it doesn't regulate speech at all, Your Honor. That's the point of why this isn't a First Amendment violation. It regulates what information the government is going to give out. And United Reporting said that's perfectly acceptable. They clearly said that the state can decide to withhold all information, and that's permissible. Do you wanna talk to standing at all? I'm not gonna tell you what I want you to talk about. The state's position below and on appeal is that the plaintiffs do not have standing with regard to the licensing provisions and with regard to the civil penalty provisions. Those two? That's an interesting position to take. With regard to the confidentiality provision, we did not raise standing because if they seek that information, we will deny it to them. And so we didn't raise standing because if they ask for a public records request of information, the state will not give it to them. With regard to the license provision, though, that does not affect the plaintiffs at all. It regulates licensing boards. It does not regulate plaintiffs or the public. And with regard to the civil penalty provision, as I was discussing, applies to only government employees. Well, it pretty clearly applies to more than government employees. Greg was wrong on that one. But I'm trying to figure out, we have four inmates. They have to show that they've been injured, in fact. And they have to show that the relief they seek, which is getting rid of these statutes, will take care of their grievance, of their injury. The civil complaint section says that someone may sue them. It doesn't say everybody will sue them. And who's gonna sue a guy on death row for damages? What? I mean, what am I missing? You don't even mention that. I think when we were looking at it, because they raised a First Amendment argument that a lot of times First Amendment claims can go broader than just the actual plaintiffs, and that's why we didn't raise that, because we're taking the facts and the complaint as true at this stage of the litigation, and we're not at summary judgment where we may raise, if the court were to disagree and send it back, we could raise further. You're arguing their case. Sorry, Your Honor. We do not believe they have standing, though, with regard to the civil penalty provision or the licensing provisions. We do not believe that they do apply to either of them. With regard to... If the court does eventually want to apply the experience and logic test, we do believe you could uphold it, even under that. And as I mentioned, the opinion in Ryan, would it be Ryan or the Owens v. Hill case out of the Georgia Supreme Court? They both go through that test in a death penalty case, and note how executions have historically... The identity of the executioner has not been known. One of the cases even mentioned that they've been hooded. I'm struggling with that analogy, because I don't think that's the issue. The issue is not the identity of the executioners. The issue here is the identity of the compounding organization and the compound itself. I would assume that you would have to admit that the Eighth Amendment law requires these inmates to show the harm. They have to show that what is wrong with the execution protocol and what other alternatives there are, correct? Correct. And isn't that what's at issue here, whether the state may say, I know what your burden is under the Eighth Amendment, and I'm going to make sure that you cannot get the information in order to carry that burden. That's a pretty simple issue. The only information that the state is not disclosing is the identities. We have a 20 page protocol that gives them information beyond the identities. And so if it is a compounded drug, in which is the concern that was raised by them on an argument, they will have the test results that are come out of that. So if they test for identity, so they'll know whether the compounded drug passed and is actually what it says it is. Does the state identify the drugs that are used in the compound? Yes, Your Honor. The information is in the protocol, what drugs will be used, what doses will be used, and if the test is done on the compounded drugs, that will be provided to the inmates. The only thing not provided is the identity of the suppliers and anyone involved in that. And help me know when logistically that occurs. When do you test the compound? Is it following one execution? Preliminary to an execution? I would believe it would be after they obviously have to receive the drugs. It has not happened yet and I am not familiar with the exact process of how, when it will occur. So then what you're saying is that the state would then make available to the public and to the inmates, obviously, as part of the public, the exact drugs that were compounded and that were used for that execution? It'll be made available to the inmates, yes, Your Honor. So they would have the information needed to challenge whether this drug is what it says it is, whether it is the correct dosage. The only thing they do not, will not have is the identities. And are the inmates to whom that is provided are able to access that information for then their own execution? Because it would appear that the problem is it doesn't help you to have an Eighth Amendment claim if you're executed the next day. We know that from the case law. So someone's executed and you get the information on the drugs that are there. And after each execution, the inmates are then provided what happened in the previous execution? I do not know exactly how that processes work, but the statute doesn't change that process at all. So the information, whether it was available when it was available before the statute, is exactly the same as when it will be available after the statute has passed. This statute does not affect that at all. I thought the way it was made available before was that it was in the state's financial reporting as to who it employed and paid for the drugs. Is that the... But this is a different source of information that you're speaking to? The execution protocol, the availability of the execution protocol has not changed. Whether we will pursue it to a public records request, give you the identity of the people we contract with or our own employees' names involved, that is what changed. That's all the statute talks to. It does not go into whether the execution protocol and what information we will not change. The provision of several years ago that I sat on that requires the district court to have an ongoing supervision of your protocol, is that still in effect? I believe so, Your Honor. And this doesn't change... Like I said, this doesn't change the protocol. It doesn't change the information that is in that protocol. And that goes into the due process argument that plaintiff was making. One quick question. I'm just trying to understand the logistics, because it has to be provided at a time that makes a dispute or your own process, your own case, viable. In this case, I believe there is a January execution for one of the plaintiffs and a February execution. So what you're telling us is that after the January execution, you would tell the February person what had been in the execution drug cocktail? Is that what you're saying? I don't believe that's what I'm saying. I'm saying I don't actually know when that information is going to be provided. I would believe it would be before the first execution, that that test information... Because they test the drug before they get... The way the protocol is worked out, and we don't have a compounded drug. We haven't used this protocol before, so that's why it's not... I don't have a concrete answer for you. But the state would receive the compound, and then they're going to test it pursuant to the protocol to make sure it is what it says it is, and it is the correct dosage. And then that information will be available to the plaintiff that is scheduled for execution in January. So they will have that information before their execution. Not in time to challenge it. I don't know if that's the case, Your Honor. And this statute... Don't we have a couple of cases in other circuits in which an inmate tried to challenge it and to get, I think, an injunction to protect against... So that there would not be an execution, so there was a time to challenge. And the response was that it's not... You may get that, you may request it, you may litigate that, but we're not gonna stay your execution in the interim. Which would mean that the guy you're getting ready to execute has no practical way of using that to challenge his own execution, nor likely with the person that's a month later. I mean, won't you agree with that? Well, two points. One, other states are not as open with their execution protocol as Ohio has been when I was reading the case law on this. But two, this statute that we are talking about today does not change that. So the remedy that you're talking about, whether they would get those test results in time for them to know whether it is the drug that it says it is and whether it's the correct dosage, getting rid of this statute that we're in question will not change that. That is not the issue. It will provide the information of the compounder early enough to challenge. Correct? I don't know whether it would be early enough to challenge. And I don't think it's before this court whether they would have that information early, the test result information early enough to challenge it. It's not our position that they would not. We believe, the state believes that they would have enough time, get that information in enough time to challenge it. But that's not what this statute is governing anyways. And with regard to the due process argument, Supreme Court is very clear in Lewis v. Casey that you do not have a due process right to discover grievances or litigate effectively. And that's exactly what they're wanting. They said they wanna be able to litigate their claims. And that's what the Supreme Court says the due process clause does not cover. And if you look at Lorraine, Lorraine is that they must follow the protocol. They will have the protocol, they will know whether we're following the protocol. And with regard to being deprived of an interest, you look at both the en banc decisions in the 8th and the 11th circuits, and they said there is no due process right to know the identities of the people involved in the execution. If you look at the 5th circuit, there is actually no liberty interest to know the protocol at all. And these are death penalty cases. They do not have a due process liberty interest in this information. And also, this 6th circuit's case in Cooey v. Strickland, that they didn't have a liberty interest in the death penalty statute itself. And furthermore, if you look at Goldberg that was cited in their brief, Goldberg was talking about if evidence is going to be used to prove the government's case, that evidence must be given over. We're not talking about evidence that we're hiding, that we're gonna use to prove a case against these plaintiffs. No, what you're talking about is evidence that these plaintiffs have to have in order to prove their own case. And that's exactly what the Supreme Court says is not part of the due process clause. That under Lewis v. Casey, there is no due process right to discover grievances or litigate effectively. That's the quote from the Supreme Court case, and it's in our briefs. And wasn't that a right to counsel issue? It's been applied in other cases, Your Honor, not just in right to counsel. A number of circuits have cited that Lewis v. Casey case and affirmatively in other circumstances, that the right to due process is to... That hindrances to actually getting in to the court, like if you don't have access to a law library. But it's not about... It begs the question here. I think the language in Lewis that caught my attention was that inmates are entitled to a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the court. The complaint says, I do not have the ability, an adequate opportunity to present my claimed violation because you are withholding the information that is necessary to the proof of that claim. Well, with regard to stating a legal conclusion in a complaint, that doesn't have to be taken as true under a 12 v. 6. But if you go further, they have... I'm not talking about stating a legal conclusion. I'm talking about what Lewis says. What it says is a guarantee is that a reasonable, adequate opportunity to present your claims. And so I'm not sure I see that at odds with the claims that are made here. Their claim being, I don't have an opportunity to present my Eighth Amendment challenge because you are withholding information. That which is necessary is that which is withheld. With your honor, if you look at both the Owens decision and all of the decisions actually in this area besides the Ninth Circuit's that was overturned, they would say that there is enough information that if you look at Glossop, there's the two tests. One, you need the compounders would not affect whether there's alternative method. Alternative method is not just a different compounder. It's a completely different method under Bayes. And if you look at the significant risk of pain, under the protocol, they will have the information whether it is the right drug and whether the dosage. That information will be available to plaintiffs. Isn't another question the viability of the drug? Because the complaint says there are five botched executions, three of which occurred in Ohio in 2014. With regard to those that would be under a different protocol, your honor, those used a different set of drugs, a different drug protocol. And so whether that information is accurate... Isn't that the very issue? You've got five botched executions, you've got three in Ohio in the previous year, and you don't know what the drug is. You don't have the information to challenge your coming execution. They will have that information, your honor. They will not have the identities. The statute just protects the identities. It's not about the execution protocol, which is available, which provides that the test results will be available. It is... And under Lorraine decision, we have to follow our protocol. So if our protocol says we do X, Y, and Z under Lorraine, we have to do X, Y, and Z, and we will do X, Y, and Z. And that includes testing these drugs, if it's a compounded drug. And so we will test, the state will test the drug, and that information will be available to plaintiffs. What under the statute, this limited statute, is not available is the identities. That is all that's not available. We're not saying we're not gonna give you, let you know what drugs we're using. We're not saying we're not going to let you know whether it was a cloudy drug, as in Georgia's case, or whether it's a clear drug. That information is available and will be available to plaintiffs. The statute does not change that. And so they... That line from Lewis v. Casey is still applicable, and they will have the right information. They just won't have the compounder to provide, to attempt to provide information to the public regarding that particular compounder, as was done with Big Pharma, and ultimately resulted in Big Pharma refusing to sell the drugs. I mean, isn't that the complaint, that we have a right to get put before the public, the information about who is involved in executions, not the executioners, but the drug sales persons, because Americans should have the opportunity to decide under their own determination of what the evolving standards of decency are, whether this is an appropriate activity on the part of the government. My time is up. Do you want me to answer? Please. Yes. Your Honor, the First Amendment does not... There is no case cited by plaintiffs that would say that we have to provide them this information so they can then go and speak to someone else. This is not a content based restriction. This is not a viewpoint based restriction. This is not even a restriction on speech, Your Honor. This is a restriction on government held information, which under Supreme Court precedent of Halchins, and particularly United Reporting, we are allowed to keep confidential. The First Amendment is not a Freedom of Information Act. This is a statute that has changed Ohio's public records law, which is the equivalent of Ohio's Freedom of Information Act. So no, there is not that right. Thank you, Your Honors. Thank you. Please, the Court. Let me first begin with that First Amendment notion. Our position has never been, and today still isn't, that the First Amendment is a Freedom of Information Act. But what the government can't do is decide that they're going to take information that has previously been available and take it away by enacting a law whose purpose and effect is to abridge speech with which they disagree, because the communicative impact of that speech has been undesirable with respect to their policy. That's our claim. That's not Halchins. Halchins doesn't deal with that question. Sorrell deals with that question. United Reporting deals with that question. Those are questions about viewpoint bias that go to the core of what the First Amendment becomes most concerned about. That's what this case is about with respect to the First Amendment issue. Let me talk, though, with respect to the issue concerning the information. The Assistant Attorney General says the government is only going to be withholding the identification information. That's simply not the way the statute is written. This statute is egregiously broad with respect to what information we will no longer get. Information that identifies or reasonably leads to the identification of just about anyone who has anything to do with executions, including drug makers, is off limits now. That means virtually all the information in discovery that we would routinely get before through discovery in this litigation, we're not going to get anymore. We're going to get... Mr. Seiler is correct. You never got the names of the individual prison guards that were involved in the execution. That's true. We wouldn't get the names, but you know what we would get? We'd be able to depose them. We'd know their experience. We'd be able to sit down across from them and look them in the eye and take their depositions. We wouldn't know their name, but we'd be able to discover... Who are we gonna discover? I missed that. We would conduct discovery under the federal rules of civil procedure like in any other litigation with these participants. They wouldn't be secret from us. We would know their backgrounds. We would know their history. We would know their qualifications. We even got to know their medical conditions in some respects, Judge Norris. We were able to obtain the kind of information that we were able... If I ask you a question, is that right? Yes, 0.43 that lists six pages of exceptions. Does that all go out the window? No, it doesn't. The problem, again, this is... What the heck of a precedent, isn't it? ID, we can ID police officers, probation officers, bailiffs, prosecuting attorneys. The problem, though, Judge Norris, and I know you were in the legislature. I know you were. I mean, the problem is the legislature here enacted a law... I didn't do that. I know you didn't. I know you didn't. Enacted a law that took away stuff that had always been available for an improper purpose. Well, not access to correctional employees. You're asking for that. You're asking for all participants. No, we're not. We're not asking for... What we need to know, what we're arguing here in this lawsuit we're here on today, is that this enactment is unconstitutional for multiple reasons, or to state it another way, we stated a claim for relief that should have survived a motion to dismiss. That's what we're here about. That enactment, for many reasons, including its viewpoint bias, violates the First Amendment. But let me address this question about the information, because the scope of the information we're no longer getting is really kind of at the core of the due process issue, because we're not gonna be able to get any longer the kind of information that we were able to put together to present the record in, for example, the Lorraine case, where they were able to get relief, because the issue in Lorraine was the equal protection issue of, are you complying with your protocol? Well, if... Has the state treasurer stopped posting these content? We have the most open records, according to the state treasurer of any state in the union. Has he quit doing it? I don't think so. Do you think he's bound by this? I'm not sure. I'm not sure, but that's one of the impacts of this law, is that information previously available is now no longer available because the government doesn't like the message advocates have been making, have been able to communicate with that information. That's a First Amendment issue. But with respect to the information being withheld, the equal protection claim that was developed in Lorraine was dependent upon being able to learn information about the protocol and how it's being done and the compliance with it, and knowing who the people are and their qualifications, and are they doing what they're supposed to be doing, and making sure that the government is doing what it says it's going to do. And in order to... One more question. Yes. Subsection F, the civil action provision, is there a... Is there any criminal liability to the person that reveals that? There's not criminal liability, Judge Norris, but there is egregious, burdensome civil penalties, including punitive damages, that apply to any person. It's our view that that statute applies... On a big issue, it applies to any person who releases the information. Well, I can understand your concern with your clients, and that's all I'm concerned with, those four people. If there was criminal responsibility for your clients revealing any information, that would be one thing. But here, it's pretty remote to think that anybody is gonna sue a death row resident for damages. But it's not just that. It's their advocates, their family members. I mean, it's not just them whose speech has been burdened here by this law. It's me. It's the lawyers who work on behalf of death row inmates. It's their family members. It's their advocates. It's the people who love them and care about them. I mean, those people aren't able to do that. This chilling effect that the statute creates is something that the Constitution ought to be concerned about. And so... But again, the due process impact of the law, just to try to focus on that, because I think that's an important part of this, is what are we not going to get any longer that we were able to get before? And it's really just an entire menu of discovery that is gonna be shut down. The ability to demonstrate equal protection violations that we were able to successfully do in Lorain is directly impaired here. And what kind of law is it? When you see... When the legislature looks and sees and they recognize that litigants have been effective in litigation. And so what do they do? They withdraw the subsidy that enables speech, because the message that the litigants and other advocates are delivering is one they don't like. That's the Velazquez case, the United States Supreme Court's decision in Velazquez, when the Legal Services Corporation wanted to be able to limit the ability of government lawyers to argue on behalf of persons who received welfare benefits. The Congress wanted the regulation to include a bar that you couldn't advocate for the unconstitutionality of the law, even if you could argue for welfare benefits. And the Supreme Court said, No, you can't do that. You can't restrict the ability to scrutinize your own conduct. That's what's going on here. You've got the legislature seeing that this litigation has been effective, seeing the impact it's had on this process, the extent to which it's had this positive effect on the process, and saying, We're not gonna let you advocate in that forum in quite the way you've been able to do in the past, and so we're gonna cut it down. We're gonna deny you the information you need to be the effective advocates you've been in the past. The identity of a drug maker. With respect to equal protection and Eighth Amendment concerns in this context, when compounded execution drugs is a whole Wild West, that is the whole issue. You gotta know that information. You gotta know their competence. You gotta know their qualifications. You gotta be able to probe that. Remember, the inmates here have been right in many respects when they've said, Hydromorphone's no good. I remember the hearing, putting on that evidence. Hydromorphone's no good. It's dangerous. It's gonna lead to spectacle executions. And the government said, Don't worry about it. It's fine. It's fine. Well, what happened? Hydromorphone's no good. We saw that with Wood. We saw that with other executions. The inmates have been right. They've been right in these respects. And with respect to compounding, I think the concern here is the government's afraid they're right again. And if you don't give them the information to be able to demonstrate that their claims have merit, then of course, you're not gonna be able to demonstrate your claims have merit. But that's not the way the system works. That violates the Constitution. Thank you for your argument. Thank all of you for your argument. Thank you. Case under advisement. Thank you.